******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ENRIQUE AYALA
(AC 35533)

Lavine, Prescott and Mihalakos, Js.

*Argued September 23, 2014—officially released January 13, 2015*

(Appeal from Superior Court, judicial district of New Haven, geographical area number seven, Oliver, J.)

*Katherine C. Essington*, assigned counsel, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Seth R. Garbarsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Enrique Ayala, appeals from the judgment of conviction, rendered after a trial to a jury, of three counts of interfering with an officer in violation of General Statutes § 53a-167a. On appeal, the defendant claims that the trial court abused its discretion by (1) excluding from evidence a slow-motion video of events that transpired at the police station and (2) permitting the state to amend the information at the conclusion of evidence. We reverse the judgment of conviction.[1]

At trial, the state presented evidence through the testimony of several Meriden police officers concerning the defendant's behavior and actions at a traffic stop and later at the police station. The defendant presented evidence to challenge the credibility of the police officers. The following evidence was before the jury.

Prior to the events that gave rise to this appeal, the defendant spent the evening with family and friends at a restaurant in Meriden. At approximately 1 a.m. on February 9, 2012, the defendant's girlfriend, Michelle Sofianos, drove him home in an Avenger motor vehicle, which was registered and insured in the defendant's name. After the defendant had reached his destination and exited the Avenger, Sofianos made an illegal U-turn near the intersection of Hanover and Orange Streets in Meriden. Officer David Buck witnessed the illegal turn and initiated a traffic stop.

The state presented evidence that before he got out of his police cruiser, Buck informed the police dispatcher of his location. He then walked to the driver's side of the Avenger and asked Sofianos for the insurance and registration cards. In the meantime, the dispatcher sent Officer Margaret Smusz to the scene. When Smusz arrived, she parked her cruiser behind Buck's and walked to the passenger's side of the Avenger. Smusz observed the defendant and used a police code to warn Buck that a man was approaching him from behind. Buck turned and saw the defendant approach him and ask with profanity why Sofianos was being detained. The defendant appeared to the officers to be intoxicated and belligerent. Buck ordered him to stand on the sidewalk, which he did, but he meandered between the sidewalk and the Avenger, swearing and yelling at the police officers about the traffic stop. The defendant was slurring his words, stumbling, and holding onto a street sign. In Smusz' view, the defendant was impeding Buck's efforts to resolve the motor vehicle stop. She instructed the defendant to be quiet and let Buck conduct his investigation. Sofianos identified the defendant, and Buck let her stand outside the Avenger so she could speak to him, but she was unable to calm him down.

Smusz again used a police code to inform Buck that

she previously had arrested the defendant for a narcotics violation, and that the police had found an unlicensed .45 caliber gun under the seat of the vehicle that the defendant had been driving. Buck noted that the defendant was wearing a leather vest bearing the insignia of a motorcycle club. On the basis of his police training, Buck believed that members of motorcycle clubs typically carry weapons. He radioed for Officer Shane Phillips to respond as additional backup. At the time Phillips arrived, the defendant was milling around on the sidewalk.

Phillips and Smusz approached the defendant but feared for their safety. They asked the defendant if he had any weapons on his person, and he stated that he did not. Despite the defendant's response, Smusz and Phillips informed the defendant that given his police history and their safety concerns, they were going to pat him down for weapons. As Phillips began to pat down the defendant, the defendant tensed up and appeared to pull away. Phillips and Smusz each grabbed one of the defendant's arms and placed him on the hood of the Avenger. Smusz put handcuffs on the defendant and arrested him for interfering. The defendant attempted to raise himself off the Avenger, but the officers pushed him down again. The officers found no weapons as a result of the patdowns. Phillips and Smusz took the defendant to Phillips' cruiser to place him inside, but he was uncooperative and pushed himself away from the cruiser. During the encounter, the defendant bit his lip, causing the lip to bleed. Thereafter, the officers found blood on the cruiser. According to Phillips, the defendant was upset and verbally aggressive. Phillips drove the defendant to the police station on West Main Street.[2]

At the police station, the defendant got out of the cruiser in a secure garage and walked inside without resisting the officers. The officers placed the defendant against a wall with his legs in a wide stance before putting him in a holding cell. When the holding cell was ready, Buck, Phillips, Smusz, and the desk sergeant took the defendant into a cell to remove the outer layers of his clothing. According to Buck, the defendant was compliant until the officers tried to remove his vest. The defendant refused to cooperate and called the officers "pigs . . . ." Smusz removed the defendant's handcuffs to facilitate the removal of his vest. The defendant uttered profanity and stated: "[Y]ou're not taking off my . . . colors." Phillips kicked the defendant's legs out into a wide stance. According to the officers, the defendant clutched his vest in his hands and moved them forward to prevent Phillips from removing his vest. In response to the defendant's having moved his hands, Buck testified that the officers "drove [the defendant] into" the corner of the wall to contain him.

In order to put handcuffs back on the defendant,

Buck, Phillips, Smusz, and the desk sergeant forced the defendant onto the floor, face down. The defendant refused to put his hands behind his back, and the officers used "pain compliance techniques" to compel the defendant to stop resisting. Smusz had her knee in the defendant's back, Buck held his legs, and the sergeant pushed his face to the floor. The defendant thrashed his legs and "donkey kicked"[3] Smusz in the thigh. When the defendant failed to follow the officers' commands to stop resisting, Buck used a "dry" Taser stun[4] on the defendant's bare inner thigh to subdue him.

As a result of having been "driven" into the wall, the defendant sustained a bump on his forehead and a swollen lip. The officers summoned medical assistance, but the defendant resisted the officers' efforts to sit him up so that the medical personnel could attend to him. The defendant swore at the medical personnel and told them to leave him alone. According to Smusz, the defendant already was in lockup and there was no need for his behavior. The defendant refused to cooperate with the booking process and suicide evaluation. The officers, therefore, cut off his clothing and placed him in a paper suit in a cell designated for suicide watch. The defendant remained handcuffed.

The defendant presented the following evidence. The defendant observed Buck stop Sofianos after she made a U-turn. He approached the Avenger to help Sofianos locate the registration and insurance cards. He and Sofianos denied that the defendant was belligerent. They also were in agreement that the defendant walked to the curb when Buck instructed him to do so. Smusz and Phillips arrived at the traffic stop in close succession, and immediately approached the defendant and put him in handcuffs. Phillips stated to the defendant that a person wearing a motorcycle club vest should not approach a police officer. When the officers placed the defendant on the hood of the Avenger for a patdown, they did so with such force that the defendant's face hit the vehicle and his teeth penetrated the skin below his lower lip. Sofianos and the defendant also agreed that the defendant was not uncooperative when Phillips and Smusz escorted him to Phillips' cruiser, and that the officers had difficulty opening the rear door.

The defendant denied that he called the police names and swore at them at the police station. He also claimed that he did not resist the removal of his vest. According to him, when the officers were attempting to remove his vest, Phillips and Buck were pulling him in opposite directions. Phillips kicked his feet apart to put the defendant in a wide stance. Due to his stance, the defendant lost his balance when the officers were removing his vest. He put his hands in front of his face to protect himself from falling against the concrete bench in front of him in the cell. When he was lying on the floor of the cell, he was not able to put his hands behind his

back because the officers were twisting his arms.

The events that transpired at the police station were recorded by a surveillance camera and shown repeatedly to the jury. Buck testified that although police cruisers are equipped with surveillance equipment, the camera in his cruiser had not been working for several months. Smusz and Phillips did not activate the surveillance cameras in their cruisers because police policy directs that the first officer on the scene is responsible for recording the incident. Smusz and Phillips were unaware that Buck's surveillance equipment was not working. Given the defendant's theory of defense that he did not interfere with Buck during the traffic stop, he cross-examined the officers extensively as to why there was no recording of the events that took place at the traffic stop. After the jury found the defendant guilty of three counts of interfering with an officer in violation of § 53a-167a,[5] the court gave him an effective sentence of two years of incarceration, consecutive to a sentence the defendant was then serving.

The following procedural history is relevant to our resolution of the defendant's claim that the court abused its discretion by permitting the state to amend the charges against him after the commencement of trial in violation of Practice Book § 36-18. See also *State v. Jordan*, 132 Conn. App. 817, 825, 33 A.3d 307, cert. denied, 304 Conn. 909, 39 A.3d 1119 (2012).

The short form information dated February 9, 2012, charged the defendant with one count of assault of a public safety officer in violation of General Statutes § 53a-167c and three counts of interfering with an officer/resisting in violation of § 53a-167a. On January 8, 2013, the day jury selection commenced,[6] the state filed a long form information accusing the defendant of assault of a peace officer, charging that on "February 9, 2012, at the intersection of Hanover St. and Orange St. in . . . Meriden, [the defendant], with the intent to prevent a reasonably identifiable peace officer from performing her duties and while said officer was in performance of her duties, did cause physical injury to said officer . . . Smusz, said conduct being in violation of § 53a-167c (a) (1)."[7] Counts two, three, and four accused the defendant of interfering with Smusz, Buck, and Phillips, respectively, and charged that on "February 9, 2012, *at the intersection of Hanover St. and Orange St.* in . . . Meriden, [the defendant] did obstruct, resist and hinder a peace officer in the performance of [her/his] duties . . . said conduct being in violation of § 53a-167a (a) . . . ."[8] (Emphasis added.)

Two days later, on January 10, 2013, after the long form information had been read to a venire panel during jury selection; see footnote 6 of this opinion; the prosecutor informed the court that he intended to amend count one of the long form information to change the location of the alleged assault to West Main Street,

where the police station is located in Meriden. The court asked the prosecutor whether the alleged location of the interfering charges, Hanover and Orange Streets, was accurate. The prosecutor stated that the location of the interfering charges was "still accurate."[9]

On January 11, 2013, the court stated that it had received an amended long form information. The court inquired of both counsel whether the defendant should be put to a new plea on the basis of the amendment; both counsel stated, "[n]o . . . ." Defense counsel conceded that the location of the alleged assault was clear from a reading of the police report and that the amended information had been discussed with the defendant.

On January 17, 2013, at the end of the state's case, the defendant filed a motion for a judgment of acquittal as to all charges against him. The court denied the motion for a judgment of acquittal. Also, on that date, after having reviewed the court's proposed jury instruction, defense counsel filed a request to charge the jury to clarify the "multiple charges . . . ." Counsel represented his concern as relating to the testimony about the defendant's cooperation or lack thereof while detained at the police station, and stated that the court's proposed charge might confuse the jury, as that was not the way the state had charged the defendant in the long form information. Defense counsel requested a clarification to the court's jury instruction: " 'You may find that some evidence applies to more than one count.' " Defense counsel suggested: "That evidence concerning interfering with each or any officer not be considered in any way as to what interference may or may not have occurred in connection with the charge of assault on an officer at the Meriden Police Department." (Internal quotation marks omitted.)

On January 17, 2013, the defendant took the witness stand to testify on his own behalf, but he did not complete his testimony that day. The following day, before the defendant resumed his testimony, however, the prosecutor indicated that he was alleging a *continuing course of conduct with respect to the three counts of interfering with an officer*, that is, that the defendant's illegal conduct occurred during the traffic stop and continued at the police station. The court stated that it initially was not inclined to permit a continuing course of conduct argument, but stated that "after review of the case law and the annotations to the jury instructions, it's clear the law does allow, specifically as to interfering, for the state to assert a continuing course of conduct over the course of the contact with law enforcement and the defendant."[10] The court also stated that it intended to craft a unanimity jury instruction.

At the conclusion of the defendant's testimony on January 18, 2013, the defense rested, and the state also rested without presenting rebuttal evidence. On January 22, 2013, the state filed a second amended long

form information (second amended information) with respect to the three counts of interfering with an officer. The second amended information charged as to the defendant's alleged interference with Smusz, Buck, and Phillips, respectively, that on February 9, 2012, "at the intersection of Hanover St. and Orange St. *and at the Meriden Police Department* . . . the [defendant] did obstruct, resist and hinder a peace officer in the performance of [his/her] duties . . . in violation of . . . § 53a-167a (a)."[11] (Emphasis added.)

In response, defense counsel stated that the second amended information came as "a bit of an unfair surprise coming at the end of evidence or close to the end of evidence," and could affect and alter final argument because the defendant was being charged for the first time with interfering at the police department. The court, however, permitted the state to amend the information after concluding that there was no unfair surprise to the defendant.[12] The court stated that it had reviewed the police report, and that defense counsel had examined the defendant and cross-examined the state's witnesses "with an eye toward being able to argue" that the defendant had not interfered with the police at Hanover and Orange Streets and at the police station.

The state also filed an amended request to charge, which it referred to as a unanimity charge.[13] The court included the unanimity charge in its instructions to the jury. See footnote 13 of this opinion.

We now turn to the defendant's claim that the court abused its discretion by permitting the state to amend the information at the conclusion of evidence in violation of his sixth amendment rights under the federal constitution[14] and his right to due process in that he did not have adequate notice of the claims against him.[15] The defendant posits two arguments in support of his claim: (1) the amendment adding a new location for the interfering offenses was not made in good faith[16] and constituted an additional charge, and (2) he was prejudiced by the amendment.[17] On the basis of our review of the record, we find that not only did the court fail to make a finding of good cause to permit the state to amend the information but also that the state failed to carry its burden to demonstrate good cause for the amendment. In addition, we conclude that the second amended information charged the defendant with an additional crime. We conclude, therefore, that the court abused its discretion by permitting the state to amend the information at the conclusion of evidence.

The defendant's claim is governed by Practice Book § 36-18, which provides: "After commencement of the trial *for good cause shown*, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding *if no additional* or different offense is charged and no substantive

rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."[18] (Emphasis added.) The party seeking to amend the information bears the burden of demonstrating good cause. See *State* v. *Jordan*, supra, 132 Conn. App. 823. Appellate courts review a trial court's decision to permit an amendment to the information after the commencement of trial under the abuse of discretion standard. See, e.g., *State* v. *Mullien*, 140 Conn. App. 299, 311, 58 A.3d 383 (2013).

The defendant first argues that the court failed to make the requisite finding of good cause to permit the state to amend the second long form information and that the state failed to demonstrate good cause. We agree.

In the original information, the defendant was charged with one count of assault of a public safety officer and three counts of interfering/resisting. The case was called to trial on January 8, 2013. Just before a venire panel was brought into the courtroom for jury selection, the prosecutor filed a long form information charging one count of assault of a peace officer at Hanover and Orange Streets, and three counts of interfering with an officer at the same location. On January 10, 2013, after that long form information was read to a venire panel; see footnote 6 of this opinion; the prosecutor sought to amend the first count charging the defendant with assault of a peace officer by changing the location of the assault charge to the Meriden police station.[19] Moreover, the prosecutor represented in response to an inquiry from the court that the location of the three interfering charges was accurate as alleged, i.e., Hanover and Orange Streets. See footnote 9 of this opinion. The record demonstrates that each of the police officers testified that he or she met with the prosecutor to discuss his or her testimony prior to trial and that the surveillance video was available for the prosecutor's review.

The procedural history further discloses that after he reviewed the court's proposed jury instructions, defense counsel filed a request for clarification of the court's instructions. Defense counsel stated his concern: "the testimony about the defendant's cooperation or lack thereof while detained at the Meriden Police Department may confuse the jury as to whether the several counts of interfering with an officer apply to interfering while being detained at said department; that is not the way the state has charged the defendant in its long form information."

The next day, however, the prosecutor informed the court that he was alleging a "continuing course of conduct"[20] with respect to the three interfering charges to include the defendant's actions at the police station. The prosecutor provided the court with citations to

three cases for the proposition that time, date, and place are not elements of an offense.[21] After the prosecutor filed the second amended long form information, the court stated that it would permit the state to amend the information to include allegations that the defendant interfered with the officers at the police station. The court stated that it had read the cases cited by the prosecutor, as well as the police report, and that defense counsel had examined the defendant and cross-examined the police officers with an eye toward being able to argue that the defendant had not interfered with the police at Hanover and Orange Streets and at the police station.

The court, however, did not make an express finding that there was good cause to permit the state to amend the information for a third time at the close of evidence. That omission is troubling given the prosecutor's representation at the time he sought to amend the long form information to allege that the assault on Smusz took place at the police station. At that time, the court specifically asked the prosecutor whether the alleged location of the three interference counts at Hanover and Orange Streets was accurate. The prosecutor represented that the location of the interference charges was accurate, i.e., Hanover and Orange Streets. See footnote 9 of this opinion. When it ruled on the state's request to amend after all evidence had been concluded, the court made no finding that there was new evidence or evidence that the state had not anticipated to warrant amending the information at that time. The court's failure to make a good cause finding is significant because the request to amend the long form information came after defense counsel took steps to limit the jury's use of the evidence regarding the incident in the holding cell. The court, in fact, failed to make any finding of good cause to amend the information after the close of evidence. Moreover, on this record, we are unable to conclude that there was any basis on which the court could have made a finding of good cause to permit the state to file the second amended long form information.

The state contends on appeal that Practice Book § 36-18 should be construed to permit the court to exercise its discretion to permit amendment, even if there is no good cause. In support of its contention, the state cites *State* v. *Van Eck*, 69 Conn. App. 482, 491, 795 A.2d 582, cert. denied, 260 Conn. 937, 802 A.2d 92, cert. denied, 261 Conn. 915, 806 A.2d 1057 (2002). *Van Eck*, however, is factually distinguishable. The defendant, Herman Van Eck, was operating a bus on Interstate 95 in Westport when he was stopped by Officer Richard Valentukonis. Id., 485. Valentukonis determined that the bus was registered in Delaware. He issued a citation to Van Eck for failing to register the bus in Connecticut. Id. The citation cited General Statutes § 14-12 (a). Id. Following a trial to the court, *Miano*, *J.*, the defendant was convicted of violating General Statutes § 14-12a. Id.

On appeal, Van Eck claimed that "because the summons cited § 14-12 (a), rather than § 14-12a, he was not timely apprised of the charge against him."[22] Id., 486. On direct examination, Valentukonis testified regarding the registration of the vehicle. Id. Van Eck represented himself and on cross-examination asked Valentukonis: "You appear to cite [§ 14-12 (a)], but when looking at the statute book, there's another statute, which is § 14-12a without parentheses. Are we to assume that you intended § 14-12 (a)? That's what the ticket said. That's not clear in my mind." (Internal quotation marks omitted.) Id. "After a brief discussion with the court regarding notice and the court's acquiescence that [Van Eck] should have been charged with § 14-12a, Van Eck continued his cross-examination of Valentukonis." (Footnote omitted.) Id., 486–87. Judge Miano continued the case during the testimony of one of the state's witnesses. Id., 488. When the proceedings resumed, Van Eck cross-examined the witness extensively regarding the identification of the bus and where it was garaged. Id. Van Eck then presented his own case. Id.

This court affirmed the judgment of the trial court in *Van Eck*, reasoning that "the state neglected to amend the information formally after [Van Eck] had elicited the discrepancy between the ticket citation and the arresting officer's testimony as to the charge. Both parties proceeded on the basis of § 14-12a, and the court rendered judgment on that basis." Id., 490. The purpose of Practice Book § 36-18 is to put the defendant on notice, and Van Eck had "actual notice of the offense with which he was charged." Id. That is not the circumstance in the case before us now, where the state filed a second amended information after the defendant had rested his case. He defended his case with notice of an assault on Smusz that took place at the police station and an interference charge that took place during the traffic stop. He did not have notice until the end of evidence that the state was charging him with interference at the police station.

Even if the record supported a finding of good cause, which it does not, the state was not entitled to amend the information because the second amended long form information alleged an additional charge, as the defendant argues. Whether the charges of interfering at the traffic stop and at the police station arose out of the same transaction or are separate crimes is a question of law. See *State* v. *Tweedy*, 219 Conn. 489, 494, 594 A.2d 906 (1991) (whether conviction of two counts of same offense that arose out of same transaction constituted violation of double jeopardy clause). The plenary standard of review applies to questions of law. See *State* v. *Burnell*, 290 Conn. 634, 642, 966 A.2d 168 (2009) (double jeopardy claims present question of law).

"Practice Book § [36-18] is primarily a notice provision. Its purpose is to ensure that the defendant has

adequate notice of the charges against which he must defend. . . . Consequently, we do not determine whether offenses are different or additional by comparing the elements of the respective offenses as we do when we consider certain claims concerning double jeopardy. . . . Instead, the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 69 Conn. App. 779, 793, 796 A.2d 611, cert. denied, 260 Conn. 938, 802 A.2d 91 (2002).

"A criminal defendant has a constitutional right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial." (Internal quotation marks omitted.) *State* v. *Bergin*, 214 Conn. 657, 674, 574 A.2d 164 (1990); see also U.S. Const., amend. VI. "When the state's pleadings have informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty." (Internal quotation marks omitted.) *State* v. *Morrill*, 197 Conn. 507, 551, 498 A.2d 76 (1985).

"The trial court's discretion pursuant to Practice Book [§ 36-18] is limited only by the requirement that no additional or different offense may be charged in and no substantive rights of the defendant may be prejudiced by an amended information." (Internal quotation marks omitted.) *State* v. *Ryan*, 53 Conn. App. 606, 620, 733 A.2d 273 (1999). In the present case, the second amended information added a new offense. "If the state seeks to amend charges after the commencement of trial, it shoulders the burden of establishing that no substantive rights of the defendant would be prejudiced. . . . Like any other party petitioning the court, the state must demonstrate the basis for its request. Under [§ 36-18], the state must show: (1) good cause for the amendment; (2) that no additional or different offense is charged; and (3) that no substantive right of the defendant will be prejudiced. *This allocation of burden encourages the state to prepare its case carefully because it bears the burden to justify subsequent adjustments.*"[23] (Citation omitted; emphasis added.) *State* v. *Tanzella*, 226 Conn. 601, 614–15, 628 A.2d 973 (1993).

The timing of an amendment to the information is central to the determination as to whether it should be permitted, with a distinction being drawn between amendments proposed before and during trial. A critical consideration is whether the amendment made during trial came before the defense presented its evidence. *People* v. *Jefferson*, 934 P.2d 870, 872 (Colo. App. 1996);

5 W. LaFave et al., Criminal Procedure (3d Ed. 2007) § 19.5 (b), p. 311. Generally, an amendment to the information may be permitted during trial provided the amendment does not (1) result in prejudice to the accused or (2) charge a different crime. See *State* v. *Jacobowitz*, 182 Conn. 585, 590, 438 A.2d 792 (1981), overruled in part on other grounds by *State* v. *Welch*, 224 Conn. 1, 4, 615 A.2d 505 (1992) (ordering new trial after improper amendment).

There are two types of amendments that can result in the charging of a different or additional offense. One type of amendment produces what is commonly described as a factually different offense in that it alters the facts alleged, but continues to allege a violation of the same substantive crime as the original pleading; the other type charges a legally separate offense. 5 W. LaFave et al., supra, § 19.5 (b), p. 312; see, e.g., *McGahan* v. *State*, 606 P.2d 396, 397 (Alaska 1980) (amendment altered charge from attempting to destroy evidence to attempting to destroy and conceal evidence improper). The second amended long form information constitutes the addition of a crime on factually distinct grounds. In other words, the defendant was alleged to have interfered with the police officers, the substantive crime, at two separate locations, i.e., two factually different crimes.

At trial, the defendant objected to the second amended information as a surprise that could affect or alter his final argument because for the first time he was being charged with interference that allegedly occurred at the police station. The state argued in response that the defendant's actions at the scene of the traffic stop and in the holding cell constituted a continuing course of conduct. We conclude that the charge that the defendant interfered with the officers at the police station was based on discrete acts of interference constituting an additional crime and was not part of a "continuing course of conduct."

In concluding that the defendant's alleged acts at the traffic stop and at the police station were separate and distinct acts or transactions, we are guided by *State* v. *Tweedy*, supra, 219 Conn. 489. In *Tweedy*, our Supreme Court determined that the conviction of the defendant, Larry Tweedy, of two counts of robbery in the first degree did not constitute double jeopardy. Tweedy's conviction was based on two counts of a "substitute information, in which the state respectively alleged that [Tweedy] had robbed the victim at approximately 8:30 a.m. on October 2, 1988, at [her apartment] in the City of New Haven, and then had robbed her again at approximately 9:00 a.m. on October 2, 1988 at 77 Broadway [her bank] in New Haven . . . . According to [Tweedy], the events at the victim's apartment and the bank were part of a continuing transaction during which he committed a single robbery. The separation of this transaction to

form the basis of two robbery charges and convictions, [Tweedy] maintains, contravenes the legislature's intent that the unit of prosecution for the crime of robbery turn upon the number of victims intimidated for a defendant's use or threatened use of force. Where, as here, a single victim is subjected to continuous intimidation by a defendant's unceasing forcible conduct, [Tweedy] claims that the legislature intended that such a course of conduct be punished as a single robbery." (Internal quotation marks omitted.) Id., 496–97.

In resolving Tweedy's claim, our Supreme Court reasoned that "[d]ouble jeopardy prohibits multiple punishments for the same offense in the context of a single trial. Nonetheless, distinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause. . . . The same transaction, in other words, may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which in itself constitutes a completed offense. . . . [T]he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent and are such as are made punishable by the [statute]." (Citations omitted; internal quotation marks omitted.) Id., 497–98.

"If a violation of law is not continuous in its nature, separate indictments may be maintained for each violation. Thus, a distinct repetition of a prohibited act constitutes a second offense and subjects the offender to an additional penalty. 21 Am. Jur. 2d, Criminal Law § 267." (Internal quotation marks omitted.) *State* v. *Snook*, 210 Conn. 244, 261, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). "[E]ach separate act of forcible sexual intercourse constitutes a separate crime." (Internal quotation marks omitted.) Id., 262.[24]

In this case, the state's initial long form information charged three counts in which the defendant interfered with an officer "at the intersection of Hanover St. and Orange St. . . ." Near the conclusion of evidence, the defendant filed a request to charge that the jury not consider the evidence presented as to the assault against Smusz when considering the interfering charges. Thereafter, the state filed the second amended information charging that the defendant interfered with the officers at the police station, claiming that it was a continuing course of conduct. Notwithstanding the state's attempt to conflate the traffic stop and police station conduct into one event, the evidence demonstrates that the charges of interference were based on two separate, distinct acts of alleged interference occurring at separate places, and separated by the transporting of the defendant from one location to another. See *United States* v. *Chappell*, 704 F.3d 551, 552 (8th

Cir. 2013) (criminal offense is distinct crime when it occurs in different location and at different time).

The defendant was arrested at the scene of the traffic stop for disrupting Buck's motor vehicle investigation. Thereafter, the defendant was placed in Phillips' police cruiser and taken to the police station where he exited the cruiser in a secure garage. The surveillance video demonstrates that the defendant exited the police vehicle and walked into the police station where he was placed against a wall while the holding cell was readied for him. None of the officers claimed that the defendant's behavior from the time he entered the police cruiser until he entered the holding cell was disruptive or constituted interference. The officers claimed that the defendant became disruptive and interfered when they attempted to remove his vest. We conclude that the defendant's alleged interference at the traffic stop on Hanover and Orange Streets and his alleged refusal to let the officers remove his vest at the police station comprised not one, but two distinct acts or transactions separated by time and location.

Because we conclude that the state failed to demonstrate good cause to permit the information to be amended at the conclusion of evidence, and because the second amended long form information alleged an additional crime, the court abused its discretion by permitting the amendment. We therefore reverse the judgment of conviction.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] Because we conclude that the court abused its discretion by permitting the state to amend the information, we do not address the defendant's evidentiary claim.

[2] Buck did not issue a traffic citation to Sofianos and released her.

[3] According to Smusz, a "donkey kick" is a backward kick.

[4] A dry stun is given when the Taser cartridge has been removed from the device "so the prongs don't shoot."

[5] The jury also found the defendant not guilty of one count of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1),

[6] For purposes of Practice Book § 36-18, a trial begins with the voir dire. *State* v. *Tanzella*, 226 Conn. 601, 608, 628 A.2d 973 (1993). Section 36-18 "is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend. . . . The importance of notice is the reason that [§ 36-18] defines the commencement of trial as the voir dire rather than the swearing-in of the jury: the defendant needs to know the nature of the accusations against him in order to question jurors effectively." (Citation omitted.) Id.

[7] General Statutes (Rev. to 2011) § 53a-167c (a) provides in relevant part: "A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

[8] General Statutes (Rev. to 2011) § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties."

[9] The record reveals the following colloquy between the court and the prosecutor:

"[The Prosecutor]: . . . When madam clerk was reading the information

today, one of the charges had the incorrect street address for which the assault on an officer occurred. So, I do intend, with the court's permission, just to amend that. I know it's not an element of the crime, but I think it should be accurately listed in the information. I think it's the first charge that has the incorrect address.

"The Court: Hanover Street and Orange Street.

"[The Prosecutor]: Yeah. It's actually on West Main Street. It occurred—the allegation is that it occurred at the police station, which is actually on West Main Street.

"The Court: The interfering, it says Hanover and Orange. Is that accurate?

"[The Prosecutor]: *That's still accurate. I'm going to just double check the police report and make sure that all the T's are, so called, crossed, but I will have that tomorrow morning.*

"The Court: All right. So, we'll—that certainly doesn't sound like a material change. It certainly may be once [defense counsel] has the opportunity to think about it, as to where the alleged assault or the assault is alleged to occur, whether that's clear from the police report, so as not to be surprise or any prejudice. And as long as no jurors live on whatever street, West Main Street . . . ." (Emphasis added.)

[10] The court did not identify the cases to which it was referring, and the parties have not identified those cases on appeal. We know of no case in which an appellate court of this state has considered whether the state may charge a continuing course of conduct for the offense of interfering with an officer.

[11] Counsel for the parties agreed that the second amended information did not have to be read to the jury. The court stated that it was the operative charging document.

[12] The following colloquy transpired when the prosecutor offered the second amended information:

"[The Prosecutor]: We did discuss this briefly last week in regard to the unanimity instruction, which was likely going to come from the court. The state felt that by amending the information, that would actually make it a little bit easier for the jurors to comprehend that unanimity instruction. Therefore, I am requesting that that be allowed to be amended. The case law is relatively clear in regard to amending informations during, and even after . . . evidence . . . . I also noted that I charged that in the conjunctive to prove in the disjunctive; therefore, there's obviously notice that both of the places are being alleged and the jury can find, based on unanimity, one or the other. So, that is the state's request.

"The Court: Thank you . . . this had been obviously the subject of much discussion and argument Friday. However, we now have a formal amended information.

"[Defense Counsel]: Correct. Only for the record, that it is my opinion that it's a bit of an unfair surprise coming at the end of evidence or close to the end of evidence. And that it may have been possible to argue differently based on . . . assuming that now he's being charged with interfering at the holding part at the police station. So, I'll note for the record that . . . as far as I'm concerned, I believe it's an unfair surprise.

"The Court: Thank you. That is noted and the record will reflect that the conversations related to this topic were brought up and argued last week and the court's conclusion remained the same; that based on the substance of the testimony, what's in the police report the court has reviewed generally, and the—the way in which cross-examination of the police officers was conducted and the direct examination of [the defendant] was conducted, that there was no unfair surprise and that counsel clearly cross-examined with an eye toward being able to argue when there was interfering and when there was not interfering, both at the police department and, based on the testimony, at the motor vehicle stop at Hanover and Orange Streets. But counsel's comments are noted for the record. And the court ruled on this Friday."

The state's brief implies that the conversations and arguments to which the court made reference took place during an in-chambers charging conference of which there is no record.

[13] The state's amended request to charge stated: "The state has alleged that the defendant has committed the offense[s] of interfering at two different locations, the intersection of Hanover and Orange Streets AND at the Meriden Police Department. You may find the defendant guilty of the offense *only if you all unanimously agree on which of the two locations the defendant committed the offense*[*s*]. This means you may not find the defendant guilty unless you all agree that the state has proved beyond a reasonable doubt that the defendant committed the offense of interfering at the intersection

of Hanover and Orange Streets *or* you all agree that the state has proved beyond a reasonable doubt that the defendant committed the offense of interfering at the Meriden Police Department." (Emphasis added.)

The defendant correctly points out in his brief on appeal that the unanimity charge is inconsistent with the state's claim of a continuing course of conduct.

[14] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

[15] In its brief, the state argues that the defendant failed to distinctly raise his claim in the trial court or assert a bypass doctrine for unpreserved claims on appeal. The state also argues that the defendant waived his good cause claim by limiting his objection at trial to the prejudicial effect of the amendments. We disagree on the basis of the precedent established by our Supreme Court and this court. Although the defendant did not use the words of Practice Book § 36-18, he made known to the court that an amendment coming at the close of evidence was an unfair surprise, which functionally preserved the claim for appeal. See *State* v. *Fernando A.*, 294 Conn. 1, 31 n.26, 981 A.2d 427 (2009) (eschewing hypertechnical and unduly restrictive application of preservation rules); *Rowe* v. *Superior Court*, 289 Conn. 649, 660–63, 960 A.2d 256 (2008) (despite inartful objection, trial court understood its basis and was not ambushed on appeal).

Moreover, the record discloses, and the state acknowledged, that the parties had an off-the-record discussion with the court regarding the unanimity instruction. The court acknowledged that there had been much discussion and argument of the matter. See footnote 12 of this opinion. The court therefore was well aware of the defendant's position regarding the use of evidence with respect to the charges in the amended long form information. See *State* v. *Favoccia*, 119 Conn. App. 1, 16, 986 A.2d 1081 (2010) (purpose of preservation requirement to provide notice to court and opposing party of legal question; court's response demonstrates notice), aff'd, 306 Conn. 770, 51 A.3d 1002 (2012); *State* v. *Guckian*, 27 Conn. App. 225, 239 n.7, 605 A.2d 874 (1992) (review afforded where party did not object to testimony but previously alerted trial court to precise question of law), aff'd, 226 Conn. 191, 627 A.2d 407 (1993).

[16] The defendant has used the term *good faith* with respect to the state's amending the long form information after the close of evidence. We need not decide whether the state amended the information in good faith, as the defendant's claim requires us to determine whether the court found *good cause* to permit the state to amend the information. See Practice Book § 36-18. The defendant has conflated the terms good faith and good cause in his brief. Because we review the actions of the court pursuant to Practice Book § 36-18, we use the term *good cause*.

[17] Because we conclude that the court did not find good cause to permit the state to amend the information after the close of evidence and that the amendment added an additional charge, we do not reach the question of prejudice.

[18] In this case, the defendant did not consent to the state's second amended information.

[19] The defendant does not claim that the amendment to count one was improper.

[20] The state has failed to identify a legal basis in Connecticut law for its charging theory that the defendant's acts at the traffic stop and later at the police station constitute a "continuing course of conduct." The "continuing course of conduct" doctrine is most commonly used in an attempt to avoid a statute of limitations defense in medical malpractice actions. See, e.g., *Watts* v. *Chittenden*, 301 Conn. 575, 583, 22 A.3d 1214 (2001). We are unaware of its having been endorsed by our courts in a criminal case such as this one.

[21] The prosecutor identified *State* v. *Beverly*, 224 Conn. 372, 379, 618 A.2d 1335 (1993) (place not element of crime); *State* v. *Bergen*, 214 Conn. 657, 670, 574 A.2d 164 (1990) (time not element of offense); *State* v. *Morrill*, 197 Conn. 507, 551–52, 498 A.2d 76 (1985) (place not element of crime); *State* v. *Parsons*, 28 Conn. App. 91, 98, 612 A.2d 73 (time not element of crime), cert. denied, 223 Conn. 920, 614 A.2d 829 (1992)

Although we agree that the date, time, and place are not elements of the crime of interfering with an officer, the cases cited by the prosecutor do not stand for the proposition that discrete acts of interference separated by time constitute a continuing course of conduct. Neither the parties nor we have found a case in Connecticut holding that a continuing course of conduct theory can apply to the facts of the present case. See footnote 20 of this opinion.

[22] "Section 14-12 (a) provides in relevant part that '[n]o motor vehicle shall be operated or towed on any highway, *except as otherwise expressly*

*provided*, unless it is registered with the commissioner [of motor vehicles] . . . .' Section 14-12a (a) specifically governs the registration of commercial motor vehicles and requires the registration of a commercial vehicle if it is most frequently garaged in this state or if it most frequently travels in and out of the state in the normal course of its operations. 'Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail . . . and be treated as an exception to the general provision.' " (Emphasis in original.) *State* v. *Van Eck*, supra, 69 Conn. App. 488–89.

[23] It does not escape our notice that the state amended the long form information twice after a venire panel was sworn in. See footnote 6 of this opinion.

[24] Compare *State* v. *Thompson*, 197 Conn. 67, 72–73, 495 A.2d 1054 (1985) (sales of narcotics between parties five days apart constitute separate transactions); *State* v. *Browne*, 84 Conn. App. 351, 373–77, 854 A.2d 13 (engaging officers in pursuit in Middletown and on Route 9 and Interstate 95 two separate acts), cert. denied, 271 Conn. 931, 859 A.2d 930 (2004); *State* v. *Williams*, 59 Conn. App. 603, 607, 757 A.2d 1191 (carrying pistol without permit on different but uninterrupted days not continuing course of conduct), cert. denied, 254 Conn. 946, 762 A.2d 907 (2000); but see *State* v. *Channer*, 28 Conn. App. 161, 166, 612 A.2d 95 (defendant engaged in continuing course of conduct by swerving vehicle to impede victim's travel, cutting off vehicle, threatening victim, brandishing gun, stealing vehicle), cert. denied, 223 Conn. 921, 614 A.2d 826 (1992).